IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CYNTHIA M. RUCKER-MOORE, )
)
              Plaintiff, )
)
v. )    Case No. 09-cv-1224-EFM-KMH
)
HARPER INDUSTRIES, INC., )
)
              Defendant. )
_____ )

## COMPLAINT

COMES NOW plaintiff, Cynthia M. Rucker-Moore, by and though her counsel, Ray E. Simmons of the Ayesh Law Offices, and for her causes of action against the defendant, Harper Industries, Inc., alleges and states as follows:

1.    Plaintiff, Cynthia M. Rucker-Moore, is a former employee of defendant Harper Industries, Inc. ("Harper Industries"or "defendant"). Plaintiff is a resident of Kansas.

2.    Defendant is a corporation doing business in the state of Kansas and may be served with legal process through its registered agent: A. Timothy Penner, 151 E. Hwy 160, Harper, Kansas 67058.

### JURISDICTION AND VENUE

3.    This is an employment case arising under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Kansas Act Against Discrimination, K.S.A. 44-1001 *et seq.* ("KAAD"). This Court has subject matter jurisdiction over plaintiff's federal law claims pursuant to 28 U.S.C. § 1331. This

Court has supplemental jurisdiction over plaintiff's pendent state law claims pursuant to 28 U.S.C. § 1367.

4. Plaintiff has fully exhausted her administrative remedies under the ADA and KAAD and has received a right-to-sue letter from the EEOC.

5. The unlawful practices and actions alleged below were committed within the state of Kansas, and venue is properly laid in this Court by virtue of 28 U.S.C. § 1391(b).

6. Plaintiff was damaged in excess of $75,000.

## FACTS

7. Plaintiff was employed by Harper Industries from April 25, 2008 to July 28, 2008. Plaintiff began employment in the Shipping Department and was transferred to the Production Department in mid-May. The production area of the manufacturing facility is not air conditioned.

8. Harper Industries is a "manufacturing plant producing specialized agricultural, industrial and turf products."

9. Plaintiff suffers from Depression, a condition that was diagnosed approximately 15 years ago. Plaintiff's Depression substantially limits several major life activities, but is controlled by prescribed medication, which was Effexor XR 150 mg Cp24.

10. On June 17, 2008, plaintiff became overheated at work. Plaintiff visited her physician, Kevin B. Holloway, MD, who gave her a Discharge Summary to provide to Harper Industries, which stated:

> The patient is prescribed medication that increases the risk of heat stroke when working in high temperatures. Please extend any reasonable accommodation to allow breaks, escape to cool environment at her request, etc.

11. On June 18, 2008, plaintiff gave Dr. Holloway's note to her supervisor, Darrin Strubble, who said he would give the note to Vic (last name not known), the plant manager.

12. Plaintiff was able to deal with the heat in the manufacturing plant until Tuesday, July 22, 2008, when the outside temperature reached 100 degrees. Plaintiff physically motioned to Darrin Strubble that she was going to get a drink in the break room. Plaintiff was absent from her work station no more than five minutes. When plaintiff returned, Strubble told her to stay out of the break room until break time. Plaintiff reminded him of her heat condition and he said, "Okay." During mid-day, plaintiff felt faint, dizzy, and disoriented. Plaintiff felt clammy; perspired profusely; had a severe headache and experienced dry heaving. Plaintiff told Strubble that she didn't feel well and needed to go home, to which he said, "Okay," without asking any questions or making any comments.

13. On Wednesday, July 23, 2008, plaintiff reported to work late and told Strubble that she needed to go to the doctor. Because plaintiff couldn't get in to see her personal physician on such short notice, plaintiff went to Wellington to see

Joel Weigand, MD, who had been recommended by Dr. Holloway. Dr. Weigand diagnosed that plaintiff had suffered from heat exhaustion and recommended: "Two days out of heat, 7/23 7/24 [Thursday and Friday], may need to work 1/2 day if temp 100 or more."

14. Later that day, on July 23, 2008, plaintiff sent Tim Penner the following email communication:

Dear Mr. Penner,

I am writing you to encourage you to take action to educate the employees and supervisors of the risk of working in high heat work environments. In my opinion, I believe the symptoms should be known and shared, and the supervisors and staff should be educated as to the same, and to act on such symptoms. These conditions can be life threatening and at up-most concern, especially the employees with-in the plant. Any heat related conditions (in My belief) should be handled with care and accommodated per Dr. and employee request. I feel it would be beneficial to have more water cooler fans distributed to many different areas of the plant. I hope no health assumptions will be made light of and consideration given to the varies [sic] types of work and individual departments conditions that separate the company in whole. I love working at your company and with the other employees here and I hope to continue my employment for many years. Thank you for your consideration!

   Sincerely,

   Cyndi Moore-Rucker

15. On Monday, July 28, 2008, shortly after clocking in, plaintiff was called into Vic's office with Strubble. Vic said, "We can fix the Friday absence, but what can we do about the one-half days if the temperature reaches over 100 degrees?" Plaintiff made a number of suggestions, including a request for a water cooler fan in her work area, to which she was given a very sharp, "No!" Plaintiff

asked if the accounts receivable / payable position was still open, as she believed she was qualified for the position, to which she was again told, "No." Vic told plaintiff that she was being "laid off" and said that it was the price she paid for being a hard worker.

16. At the end of plaintiff's probationary period, Vic had told plaintiff, "You're doing a great job. I've not received anything but compliments about your work from coworkers and supervisors."

17. After July 22, 2008, the temperature rose to 100 degrees or above on only three days in August.

18. Although plaintiff was purportedly only "laid off," Harper Industries advertised for open positions without recalling plaintiff, even after summer had passed.

19. Plaintiff's layoff / discharge from employment is in violation of Harper Industries' employment policies regarding Americans with Disabilities Act accommodations, Equal Employment Opportunity and Open Door Policy, as well as being contrary to state and federal law.

### FIRST CAUSE OF ACTION: FAILURE TO REASONABLY ACCOMMODATE IN VIOLATION OF THE ADA AND KAAD

20. Plaintiff incorporates paragraphs 1 through 19 of this complaint.

21. Plaintiff suffers from Depression, an impairment which substantially limits certain major life activities, but which is controlled by prescribed medication.

22. Defendant and/or its managers and agents had knowledge that plaintiff was prescribed medication and of her corresponding need to avoid working in extremely hot temperatures.

23. Plaintiff requested reasonable accommodations, of which defendant refused to consider.

24. Plaintiff suffered damages and is entitled to an award of damages for back pay, injunctive relief or front pay, compensatory damages including damages for future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses; punitive damages; attorneys' fees; costs; and such other and further relief the Court deems just and proper.

## SECOND CAUSE OF ACTION: RETALIATORY DISCHARGE FROM EMPLOYMENT IN VIOLATION OF THE ADA AND KAAD

25. Plaintiff incorporates paragraphs 1 through 24 of this complaint.

26. Defendant willfully retaliated against plaintiff for requesting reasonable accommodations and for complaining about defendant's refusal to make such reasonable accommodations.

27. Plaintiff suffered damages and is entitled to an award of damages for back pay, injunctive relief or front pay, compensatory damages including damages for future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses; punitive damages;

attorneys' fees; costs; and such other and further relief the Court deems just and proper.

### THIRD CAUSE OF ACTION: FAILURE TO RECALL FROM LAYOFF IN VIOLATION OF THE ADA AND KAAD

28. Plaintiff incorporates paragraphs 1 through 27 of this complaint.

29. Defendant has had open job positions, which plaintiff was qualified to perform with reasonable accommodation.

30. Knowing of plaintiff's disability and that it would need to accommodate that disability, defendant refused to recall plaintiff from lay-off.

31. Plaintiff suffered damages and is entitled to an award of damages for back pay, injunctive relief or front pay, compensatory damages including damages for future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses; punitive damages; attorneys' fees; costs; and such other and further relief the Court deems just and proper.

WHEREFORE, plaintiff prays for judgment in her favor and against defendant for the following relief:

A. For monetary damages in excess of $75,000 to compensate plaintiff for economic damages, pre-judgment interest, for compensatory damages for past and future non-pecuniary loss, and for such other and further damages this Court deems just and proper;

B.   For appropriate injunctive and/or equitable relief as this Court deems just and proper;

C.   For punitive damages;

D.   For plaintiff's reasonable attorneys fees and the costs of this action;

E.   For any such other and further relief this Court deems just and proper.

F.   Plaintiff reserves the right to amend this Complaint or demand for judgment as new information is discovered during the course of this action.

>Respectfully submitted,
>
>AYESH LAW OFFICES
>
>By: /s/ Ray E. Simmons
>Mark G. Ayesh, #10175
>Ray E. Simmons, #12296
>8100 East 22nd Street North
>Building 2300, Suite 2
>P. O. Box 781750
>Wichita, KS   67278-1750
>Telephone:  316-682-7381
>E-Mail: mayesh@ayesh.kscoxmail.com
>          rsimmons@ayesh.kscoxmail.com
>          *Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests that the issues in this matter be heard by a jury.

## DESIGNATION OF TRIAL

Plaintiff designates Wichita, Kansas as the location for the trial in this matter.

By: _____
Mark G. Ayesh, #10175
Ray E. Simmons, #12296